exh 11 p108 – p 110

ALAME    COUNTY
P 108                108
JAN - 4 2002

ERK OF    SURT
Shelly Dedgwick
Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF ALAMEDA

THE PEOPLE OF THE STATE OF CALIFORNIA
vs.

Action No. 166802

VERDICT

HA, HUNG, Defendant

We, the jury in the above entitled cause, find the defendant, **Guilty,** of a misdemeanor, to wit: a violation of Section 647(j) of the Penal Code of the State of California, in that said defendant did then and there willfully lodge in a building, structure, vehicle, and place, located on the 2nd floor hallway, at Dwinelle Hall without the permission of the owner and person entitled to the possession and in control thereof, UC Regents.

Dated  1/4/02

Foreperson

FILED

THIS _____ DAY OF _____, 20_____

**ARTHUR SIMS, CLERK**

_____
DEPUTY CLERK

**000067. |**

Exh. ll-A

FIL_
/ ˘ AMEDA       \T˘

JAN - 4 2002

SUPERIOR COURT OF THE STATE OF CALIFORNIA OF THE
IN AND FOR THE COUNTY OF ALAMEDA

_Kelley Sedgwick_
Deputy

THE PEOPLE OF THE STATE OF CALIFORNIA
  vs.

HA, HUNG, Defendant

Action No. 166802

VERDICT

We, the jury in the above entitled cause, find the defendant, **Guilty,** of a misdemeanor, to wit: a violation of Section 243(b) of the Penal Code of the State of California, in that said defendant did then and there willfully and unlawfully use force and violence without injury upon Officer Collom, a peace officer engaged in the performance of his duties and did know or reasonably should have known that the said Officer Collom was a peace officer engaged in his duties.

Dated ___1/4/02___

___
Foreperson

FILED

THIS ____ DAY OF _____, 20____

**ARTHUR SIMS, CLERK**

_____
  **DEPUTY CLERK**

Exh. 11-B

ALAME COUNTY

VO

JAN - 4 2002

CLERK OF T...    ...    COURT
Shelly Sedgwick
DEPUTY

SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF ALAMEDA

THE PEOPLE OF THE STATE OF CALIFORNIA
vs.

HA, HUNG, Defendant

Action No. 166802

VERDICT

We, the jury in the above entitled cause, find the defendant, **Guilty,** of a misdemeanor, to wit: a violation of Section 647(j) of the Penal Code of the State of California, in that said defendant did then and there willfully lodge in a building, structure, vehicle, and place, located on the 2nd floor hallway, at Dwinelle Hall without the permission of the owner and person entitled to the possession and in control thereof, UC Regents.

Dated 1/4/02

Foreperson

FILED

THIS _____ DAY OF _____, 20____

**ARTHUR SIMS, CLERK**

_____
DEPUTY CLERK

**000067.1**

Exh. 11-C

exh  12  p 111 - p 122

111

**ORIGINAL**

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF ALAMEDA

BEFORE THE HONORABLE WINTON McKIBBEN, JUDGE

DEPARTMENT NO. 104

---o0o---

THE PEOPLE OF THE STATE OF             No. 166802
CALIFORNIA,

       Plaintiff,

       Vs.

HUNG HA,

       Defendant.
_____/

<u>**REPORTER'S TRANSCRIPT OF PROCEEDINGS**</u>
<u>**SENTENCING**</u>

WILEY W. MANUEL COURTHOUSE
OAKLAND, CALIFORNIA

WEDNESDAY, JANUARY 9, 2002

APPEARANCES:

For the People:                    ANDREW ROSS
                                   Deputy District Attorney

For the Defendant:                 HUNG HA
                                   In Propria Persona

From the Public Defender's Office: ROGER SPENCER
                                   Deputy Public Defender

**000203**

DEANNA HILL, CSR #8765                Exh. 12

| | |
|---|---|
| 1 | WEDNESDAY, JANUARY 9, 2002 |
| 2 | ---o0o--- |

3    THE COURT:  I'll repeat, Mr. Ha, that the Public
4    Defender has filed a conflict in your case, so they will not
5    be representing you.

6              MR. HA:  Yes.

7              THE COURT:  And I'll refer your matter to the Bar
8    Association and appoint an attorney to represent you on your
9    appeal.  The clerk has advised me that the Bar indicated that
10   they would not appoint anybody or designate anybody to
11   represent you at this time until you were sentenced, so we'll
12   have to do that as a preliminary fact to comply with whatever
13   their procedures might be.

14             MR. HA:  Yes.

15             THE COURT:  And you have a couple of motions.  You
16   made a motion for judgment notwithstanding the verdict and to
17   set aside the verdict of the jury and grant you a new trial, I
18   believe were your two motions.

19             Mr. Ross is here and he received copies of the
20   papers that you filed in the matter yesterday.  And I don't
21   know whether copies were prepared for you or not, but they
22   should be.

23             MR. HA:  Yes, I did receive copies.

24             THE COURT:  You did receive them?

25             MR. HA:  Yes.  Let me give -- make one motion.  I
26   submitted a motion of six pages and five supplemental motions,
27   one, two, three, four, five.

28             THE COURT:  But they dealt with the same subject

1    generally.                                                    113

2              MR. HA:   That's correct, your Honor.

3              THE COURT:   Mr. Ross, your comments on his motions

4    and on the sentencing matter?

5              MR. ROSS:   Thank you, your Honor.   I'll keep my

6    comments brief on Mr. Ha's apparent motion that was submitted

7    in handwriting at yesterday's court date.

8              As to Mr. Ha's first motion, the motion for judgment

9    notwithstanding the verdict, that can be swiftly dealt with

10   based on the fact that J.N.O.V's, judgment notwithstanding

11   verdicts, are inapplicable in criminal cases.   I will cite the

12   two cases of authority on point.   People v. Morales,

13   M-o-r-a-l-e-s, 48 Cal. 3d 527, and in People v. Morales, a

14   1989 case, they've also cited People vs. Morgan, M-o-r-g-a-n,

15   cited at 75 Cal. App. 3d 32.   Based on the inapplicability of

16   judgment notwithstanding the verdict motions to criminal

17   cases, I would urge the Court to deny the first motion.

18             As per Mr. Ha's alternative end line of his motion

19   for new trial, I would cite that having reviewed Mr. Ha's

20   handwritten motion, I saw nothing more in his papers than

21   Mr. Ha voicing his dissatisfaction with the jury and his

22   disagreement with the verdict returned by the jury.   He cited

23   no proper legal grounds or legal authority for any basis for

24   his motion.   He cited no proper grounds pursuant to 1181 of

25   the Penal Code for new trial.   He cited no proper grounds for

26   supporting theories under 1182 of the Penal Code for

27   suspension of judgment.   Instead, he cited predominantly his

28   favorite code section from the Evidence Code, 451(f), which he

1     interpreted about six or more ways throughout his papers, a
2     code section that applies only to mandatory judicial notice
3     and is not applicable to the basis for Mr. Ha's motions.

4             The jury trial was heard in front of your Honor.  It
5     was prosecuted by myself.  Mr. Ha represented himself as his
6     own attorney.  As a witness in this case, Mr. Ha was nothing
7     more than a witness.  As a witness in this case, Officer Mark
8     Rhoden, Officer Jason Collom, Officer Devin Kochis, they were
9     all nothing more than witnesses.  What I said in my arguments,
10    what I told the jury about the evidence, was not evidence.
11    What Mr. Ha argued to the jury or what Mr. Ha told the jury
12    about evidence, other than when he testified under oath as a
13    witness, was not evidence.  The fact determinations at issue
14    were received by the jury.  The jury was discharged with the
15    responsibilities of applying the facts to the law.  The law
16    was provided by the Court.  The law was stated to the jury.
17    The jury made fact determinations that they found the
18    witnesses, other than Mr. Ha, to be more credible and more
19    believable.  Based on those fact determinations, upon applying
20    the law to the case, the jury reached verdicts of guilty on
21    all counts.

22            Mr. Ha is clearly unhappy with the result.  Mr. Ha
23    clearly disagrees with the result.  However, Mr. Ha has failed
24    to cite any legal grounds for this motion.  Therefore, I
25    assert to the Court and urge the Court that on the second part
26    of the motion for new trial Mr. Ha's motion should be denied.

27            THE COURT:  Do you want to speak to those --
28    anything you want to add beyond what your papers have

1    indicated, Mr. Ha?

2            MR. HA:   Yes.   I wanted to respond to Mr. Ross'
3    remarks.

4            First he said that my first motion should be denied
5    because motion for judgment notwithstanding verdict is not
6    applicable in a criminal case.  I assume that's correct.  Yet
7    what we have to deal with is not normal, but the substance
8    which the motion deals.  So we could just simply agree that
9    the title of the motion should be changed to something else.
10   We change the form a little bit and substance still applies.

11           That motion raises serious issues that must be dealt
12   with because the Court has to be just and fair and the People
13   of California has to be just and fair and so also the D.A.'s
14   Office has to be fair and just because it represent the
15   People.  So we could just deal -- we have to deal with the
16   serious issues that are raised in that paper.  And we could
17   just change it to motion for new trial so the technical
18   problems will be resolved in that way that we can move along
19   to deal with the issues.

20           As the other -- as to the other five supplementals,
21   supplemental motions, Mr. Ross says that I have cited no legal
22   authorities.  I totally disagree.  All I agree with Mr. Ross
23   is that I have not cited exactly applicable case laws or
24   statutes of California.  But Mr. Ross understands I am in -- I
25   am in custody.  I have no law library accessible to me.  But I
26   cite the principle that's always applicable.  That's fairness
27   and justice.  And in addition to that, I also cited
28   Constitution provisions, and also other, like Penal Code

1  Section 681.  And I don't think that Mr. Ross' objection,
2  which is based on the lack of precise legal authority, should
3  be a reason for rejecting my motions.

4  And in addition to that, Mr. Ross totally failed to
5  acknowledge that those five supplemental motions deal with
6  serious factual issues.  I could only agree with him if he
7  points out flaws in them to the extent that those five
8  supplemental motions do not raise specific factual issues.
9  The factual issues are there, but they are somewhat general.
10  They are not as precise as possible.

11  Of course, I should be excused from presenting facts
12  at this point.  I don't have the transcript of the trial.  I
13  don't have lots.  I don't even have paper and pen with me in
14  jail.  So it's not possible for me to deal with the factual
15  issues which just support my contention that this whole jury's
16  verdict is totally ridiculous.

17  It's not -- having said that, let me point to
18  Mr. Ross' comments on my unhappiness.  It's not that I am
19  unhappy about it, about the jury's verdict.  It's totally
20  ridiculous.  A jury trial of jurors who -- it's totally
21  ridiculous that all the 12 jurors voted guilty on all three
22  counts.  It's just totally ridiculous.  And I certainly have
23  my reasons to pick up that statement.  That's one important
24  point, and I make that in general.

25  And another general point is that I am pretty sure
26  to a high degree that Mr. Ross has engaged in criminal
27  activities against me and he has committed violations of
28  California Penal Code Section 182 subsection (a) and

117

1  subsection (5). That's obstructing and preventing the due
2  administration of justice. I am here because I want -- I am
3  the witness of police crimes. I commit totally no crime, none
4  whatsoever. And I came here to represent myself to go through
5  the trial because I need to present to the People of
6  California my version of the event and let them decide and let
7  them see what police crimes are. And that's the
8  administration of justice.

9      And the D.A.'s Office has engaged in activities
10  that's become more and more dubious in culminating in this
11  absurd success in prosecuting me. And I do charge Mr. Ross
12  and certain other people in the D.A.'s Office that they
13  knowingly helped cover up this police crimes. They tried to
14  cover this up in order -- cover up the police crimes by
15  convicting me, by using conviction as a means to silencing me.
16  That's what they are up to. I saw this pretty clearly and
17  more and more clearly as I go through this trial. That's the
18  criminal nature of Mr. Ross' behavior. That's really at
19  issue, besides total absurdity of this jury's verdict. I
20  think Mr. Ross should admit his mistake and waive all
21  objections and let the Court decide whether the officers'
22  testimony are perjury.

23      I know for sure they are perjury. As far as all
24  materials go, they are 100 percent perjury. I conduct this
25  trial myself with the intention that they -- when they came to
26  the witness stand, they face two difficult choice. One is to
27  admit their crimes. The other one is to commit perjury. They
28  commit perjury with the protection of the D.A.'s Office and

118

1   with the particular protection of Mr. Ross.  So my purpose of
2   conducting this trial should be clear by this point.

3   And let me repeat, when Officer Collom and Officer
4   Rhoden took the stand, they faced difficult choice.  They
5   either admit that they commit crime against me or else they
6   commit perjury.  And I think the Court should have the
7   obligations to hire expert witness to -- expert witness to
8   analyze all their complaints and analyze their testimonies in
9   order to determine whether they are perjury.  I have said they
10  are perjuries.  They are 100 percent perjuries.  Of course, I
11  am the party in this case.  And it should be one or more
12  expert witness independent analysis of their testimony and
13  complaints and the analysis of all the transcript of the
14  entire trial and plus the analysis of all Mr. Andrew Ross
15  behavior throughout this trial to determine who is telling the
16  truth here.

17  Having said that, let me get to the point.  This
18  court has no personal jurisdiction over me, none whatsoever.
19  Under California Penal Code 780 -- 740.  I'm sorry.  740
20  requires that a complaint be filed.  We know for sure that if
21  a complaint was totally pre-fabricated by criminal against the
22  citizen, there's no complaint, none whatsoever.  You don't
23  need a lot of expertise to know that.  You don't need to be a
24  legal scholar to know that.  You don't have to be really
25  experienced litigator to know that.  If a complaint, criminal
26  complaint, within the meaning of 740 is created totally by
27  pre-fabrication by police officer who beat up somebody and
28  cover it up because there was no independent witness

1   against -- to testify against them, then this complaint cannot
2   be real.  And therefore, this court has no jurisdiction over
3   me, none whatsoever.  And what the criminal justice has done
4   so far is to kidnap me and holding me hostage.  That's what I
5   have to say.

6               THE COURT:  Are you finished?

7               MR. HA:  Yes, your Honor.

8               THE COURT:  All right.  Mr. Ross, what would you
9   like to say about sentencing?

10              MR. ROSS:  Your Honor, I'd first ask for a ruling on
11  Mr. Ha's motions before proceeding to sentencing.

12              THE COURT:  All right.  Well, I have heard what each
13  of you has said, and I've read the documents that you
14  submitted, Mr. Ha, and I find no legal basis in which to grant
15  either motion, so they're both denied.  One is inapplicable to
16  this proceeding, but it's assuming, as you suggest, that the
17  merits of the case -- without it's title, on the merits I find
18  that it's meritless.  On your motion for new trial, that is
19  likewise denied.

20              What would you like to say about sentencing,
21  Mr. Ross?

22              MR. ROSS:  Your Honor, Mr. Ha was charged with three
23  offenses:  A violation of 148(a) of the Penal Code, which
24  carries a one year, $1,000 -- one year in county jail, $1,000
25  maximum fine; violation of 243(b) of the Penal Code, which
26  carries one year in county jail maximum and a $2,000 fine
27  maximum; as well as 647(j) of the Penal Code, which carries a
28  six-month maximum and a fine, six-month maximum incarceration

120

1   in the county jail.  Mr. Ha is facing two and a half years of
2   exposure based on these charges.

3        Mr. Ha has made it quite clear since the inception
4   of the original proceedings and as well as the jury trial that
5   the only law in the United States that applies in any form to
6   Mr. Ha is the United States Constitution.  And he has time and
7   time again illustrated and argued to the Court that the Court
8   has no personal jurisdiction.  The Court that creates orders
9   doesn't create orders, but only creates contracts.  Conditions
10  of his release to not go back to the University of California,
11  Berkeley campus, those conditions could not be enforced
12  because they were illegal.  They were unlawful.  They were a
13  contract.  No order of this Court could keep Hung Ha from the
14  University of California, Berkeley, as Mr. Ha put it at some
15  point during the trial.

16       Throughout the trial he conducted himself in such a
17  way so as to indicate that University of California, Berkeley
18  Police Department constitutes nothing more than a gang.
19  They're corrupt to the core.  That includes Oakland Police
20  Department as well as the Berkeley Police Department.  Mr. Ha
21  made it quite clear that he does not recognize any of those
22  agencies as being a legitimate law enforcement agency.

23       Mr. Ha's a man who has indicated that he does not
24  recognize local law enforcement.  He does not recognize local
25  rules.  He does not recognize the jurisdictions of the courts.
26  Instead, he rests his hat solely on the dedication to the
27  United States Constitution.

28       This is a case of violence, violence that resulted

1   in injury to Officer Jason Collom.  This is a case where

2   Mr. Ha now cannot demonstrate a residency.  He cannot

3   demonstrate employment.  He's demonstrated no legitimate ties

4   to either the area or to the University of California,

5   Berkeley.  The only thing about Mr. Ha that is a tie to the

6   University of California, Berkeley, of any legitimate nature

7   is that he is a 1983 graduate with a bachelor's degree,

8   bachelor's of science, from said university.  He's not

9   employed by the university, he's not a resident of the

10  university, he's not a student at the university, and he has

11  demonstrated no lawful business at the university.

12          Mr. Ha has shown no remorse for these crimes.  He

13  has indicated no responsibility and instead has accused

14  everyone, including the District Attorney's Office, local law

15  enforcement agencies, the courts, of conspiracy.

16          He testified during the trial.  He perjured himself.

17  And after being issued court orders not to have any contacts

18  at the University of California, Berkeley buildings, Mr. Ha

19  went right back to the campus.  He continued with his same

20  routine.  He continued with his workouts at the Recreation

21  Facility where he had a membership, but was a U.C. Berkeley

22  building.  He defied the Court's orders, he defies

23  jurisdictions, and he's demonstrated to the Court the type of

24  person that he is and the type of person that he will be if

25  released from custody, and he has also demonstrated how he

26  will conduct himself if released from custody.

27          Mr. Ha has no intention of not returning to the

28  University of California, Berkeley, as it has been

122

1   demonstrated throughout his own statements, his own testimony,
2   as well as evidence that he likens the University of
3   California to a very large residence for himself.  It has all
4   the facilities he needs.  It has the library for his personal
5   business.  It has, quote, unquote, offices that he can use in
6   Berkeley buildings.  It has the rec. center.  He has his
7   affiliation with the International House, which is not a
8   University of California, Berkeley building where he receives
9   his meals.

10      Based on all the evidence of the trial, all the
11  conduct of Mr. Ha, and even based on Mr. Ha's own statements
12  alone in his, for example, motion for new trial, Mr. Ha has
13  indicated that he does not accept this Court's jurisdiction.
14  Therefore, it's my recommendation that Mr. Ha be sentenced to
15  no less than six months to a year in the county jail, be
16  placed on three years of felony -- formal probation, be
17  ordered to have no contact in writing with Mark Rhoden and
18  Jason Collom, be ordered in writing to have no contact with
19  the University of California, Berkeley campus, to have no
20  contact with any University of California, Berkeley building,
21  to be ordered to pay restitution, if any, to Jason Collom, to
22  be subject to a three-way search and seizure clause, as well
23  as to be required to identify himself upon request by a peace
24  officer or probation officer at any time, day or night, with
25  or without probable cause, and to be ordered to pay the
26  mandatory restitution fund fine in this matter, your Honor.
27      THE COURT:  Thank you.
28      Mr. Ha, what would you like to say in response?

exh 13A   p 123

COUNTY OF ALAMEDA

*?/23*

## NOTICE OF TIME FOR FILING BRIEFS
## NOTICE OF TIME AND PLACE OF HEARING

ENDORSED
FILED
ALAMEDA COUNTY

███ AMENDED BRIEFING SCHEDULE ███

OCT 0 4 2006

Appellant: Hung Ha

CLERK OF THE SUPERIOR COUI
By Marie Mayupao, Deputy

Vs.

Appellate No: 4529
Trial Court No: 166802

Respondent: People of the State of California

You are hereby notified that the Court will consider the appeal in the above-entitled case on ████ February 16, 2007 at 2:00 P.M. in Dept 21 ████ 1221 Oak St, Administration Bldg, Oakland, CA. Oral argument is not required and will not be permitted in the absence of a timely written request following issuance of the Notice of Oral Argument.

Appellant shall file Opening Brief not later than: ████ October 30, 2006 ████

Respondent may file Reply Brief not later than: November 20, 2006

Appellant may file Closing Brief not later than ████ November 30, 2006 ████

████ ALL BRIEFS MUST BE FILED IN TRIPLICATE. Please see attachment for ████ the payment and filing information. Mail to: Appeals Division, 1225 ████ Fallon St, room 109, Oakland, CA 94612 ████

### CLERK'S CERTIFICATE OF MAILING

I certify that I am not a party to this cause. A copy of the foregoing was mailed by first class, prepaid postage to the parties listed below. The mailing and execution of the foregoing occurred at Oakland, CA.

Date: October 4, 2006

By: _____
Deputy, Appeals Division
(510) 272-6781

Hung Ha
P. O. Box 367
Berkeley, CA. 94701

Allison Danzig, DDA
District Attorney's Office
1225 Fallon St. 9th Floor
Oakland, CA. 94612

Counsel for Appellant

Counsel for Respondent

Exh. B A

exh 13B   p 124

SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF ALAMEDA

124

| Date: | October 30, 2006 | Hon. | **Judge Kenneth Burr** | , Presiding Judge | Marie Mayupao | , Deputy Clerk |
|---|---|---|---|---|---|---|
| | | | Judge Richard Keller | | Not Reported | , Reporter |
| | | | Judge Brenda Harbin-Forte | | | |

**People of the State of California**                                    Counsel appearing
                                                                          for Plaintiff

                                    **Plaintiff/Respondent**

**VS**                                                                    No Appearance

                                                                          Counsel appearing
                                                                          for Defendant

**Hung Ha**

                                    **Defendant/Appellant**

                                                                          No Appearance

| **NATURE OF PROCEEDINGS:** | **Application For Relief From** | **Action No.** | **4529** |
|---|---|---|---|
| | **Default Of Failing to Designate** | **Trial Court** | **166802** |
| | **Exhibits and Second Application** | **WWM** | |
| | **For Extension Of Time To File** | | |
| | **Opening Brief** | | |

**Appellant Ha's "Application For Relief From Default Of Failing to Designate Exhibits"
and "Second Application For Extension of Time" is ruled upon as follows:**

1.     IT IS ORDERED that Appellant's request for augmentation to include all trial
exhibits, both admitted and excluded, is deemed MOOT.  Pursuant to the trial court Clerk's
Docket and Minutes of August 4, 2003 "the record on appeal in this matter shall consist of . .
. the exhibits presented at trial, and all other documents pertaining to the charges . . . " (CT
166.)  Thus, there is no need for the Appellate Division to order augmentation.  With regard
to Appellant's request for the Appellate Division to produce the trial exhibits for Appellant's
review, that is not within the appellate court's purview.  A party intending to rely on exhibits in
arguing his or her case on appeal, must be sure to arrange for transmittal of the exhibits to
the appellate court.

2.     **Appellant's request for extension to file opening brief is DENIED.**

Copies of this minute order mailed this date: October 30, 2006

Hung Ha                                              Allison Danzig, DDA
P.O. Box 367                                         District Attorney's Office
Berkeley, CA. 94701                                  1225 Fallon St. 9th Floor
                                                     Oakland, CA. 94612
**APPELLANT'S ATTORNEY**                             **RESPONDENT'S ATTORNEY**

Exh. 13-B

exh 13C   p 125

Hung Ha
P. O. box 367
Berkeley, CA 94701-0367
E-mail address: seasprout9@yahoo.com
Defendant-appellant in Pro Per

i 25

APPELLATE DEPARTMENT

SUPERIOR COURT OF CALIFORNIA

IN AND FOR THE COUNTY OF ALAMEDA

PEOPLE  OF CALIFORNIA,
    Plaintiff-Respondent

      v.

HUNG HA,
    Defendant-appellant

Case no.: 4529

DEFENDANT-APPELLANT'S
OPENING BRIEF (plus requests for
judicial notice)

Respectfully submitted by Hung Ha on Nov. 2, 2006, Thursday

RECEIVED:
CLERK OF THE SUPERIOR COURT
STATE OF CALIFORNIA, COUNTY OF ALAM
BY:

Exh. B-C

exh 13D   p 126

SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF ALAMEDA

(26)

| Date: | November 06, 2006 | Hon. | Judge Kenneth Burr | , Presiding Judge | Marie Mayupao | , Deputy Clerk |
|---|---|---|---|---|---|---|
| | | | Judge Richard Keller | | Not Reported | , Reporter |
| | | | Judge Brenda Harbin-Forte | | | |

| People of the State of California | | Counsel appearing for Plaintiff |
|---|---|---|
| | **Plaintiff/Respondent** | |
| **VS** | | No Appearance |
| | | Counsel appearing for Defendant |
| **Hung Ha** | | |
| | **Defendant/Appellant** | |
| | | No Appearance |

| NATURE OF PROCEEDINGS: | Request For Relief & Extension Of Time To File Opening Brief/Request For Leave To File A 17 Page Opening Brief | Action No. Trial Court WWM | 4529 166802 |
|---|---|---|---|

Appellant Ha's "Application For Reconsideration Of Denied Application For Extension;
Application For Relief From Default Of Missing Due Date of October 30, 2006," is ruled upon
as follows:

1.    Appellant's request for relief from default and extension of time to file opening
brief is DENIED.

2.    Appellant's request for leave to file a 17 page opening brief is DENIED.

Copies of this minute order mailed this date: November 06, 2006

Hung Ha
P.O. Box 367
Berkeley, CA. 94701

**APPELLANT'S ATTORNEY**

Allison Danzig, DDA
District Attorney's Office
1225 Fallon St. 9th Floor
Oakland, CA. 94612
**RESPONDENT'S ATTORNEY**

Exh B -D

exh 13E   p 127

127

**IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**IN AND FOR THE COUNTY OF ALAMEDA**

**APPELLATE DEPARTMENT**

ENDORSED
FILED
ALAMEDA COUNTY

NOV 2 0 2006

CLERK OF THE SUPERIOR COURT
By Maria Mayupao, Deputy

**PEOPLE OF THE STATE OF CALIFORNIA**

    Plaintiff/Respondent

**Hung Ha**

    Defendant/Appellant

Appellate No. **4529**
Trial Court No. **166802**

      The appellant having failed to file an opening brief after notice was given under rule 103(b) of the California Rules of Court, the above entitled appeal is hereby dismissed.

Date: 11-17-06

_____
JUDGE OF THE SUPERIOR COURT

Ex. 13-E

exh 14   p 128 - p 142

P. 128
185

1  BILL LOCKYER, Attorney General
   of the State of California
2  TYLER B. PON
   Lead Supervising Deputy Attorney General
3  AMY W. LO (State Bar No. 194308)
   Deputy Attorney General
4  1515 Clay Street, Suite 2000 ~ P. O. Box 70550
   Oakland, CA 94612-0550
5  Telephone:  (510) 622-2252
   Facsimile:  (510) 622-2121
6

**FILED**
ALAMEDA COUNTY

DEC 2 2 2004

CLERK OF THE SUPERIOR COURT
By _____ EA Almata _____
                        Deputy

7  Attorneys for State Court Defendants,
   WINTON McKIBBEN; THOMAS REARDON; and
8  STATE OF CALIFORNIA

9

10        IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                   FOR THE COUNTY OF ALAMEDA

12

| | |
|---|---|
| 13  HUNG HA,<br><br>14                    Plaintiff,<br><br>15        v.<br><br>16  ANDREW ROSS; MARK RHODEN;<br>JASON COLLOM; WINTON McKIBBEN;<br>17  THOMAS REARDON; COUNTY OF<br>ALAMEDA; and STATE OF CALIFORNIA,<br>18<br>                    Defendants.<br>19 | CASE NO.:   2002074172<br><br>**NOTICE OF MOTION<br>AND MOTION TO HAVE PLAINTIFF<br>DECLARED A VEXATIOUS LITIGANT;<br>FOR PLAINTIFF TO POST SECURITY<br>PURSUANT TO CCP § 391.1;<br>FOR A PRE-FILING ORDER<br>TO PRECLUDE PLAINTIFF FROM<br>FILING NEW LITIGATION<br>IN PROPRIA PERSONA;<br>MEMORANDUM OF POINTS AND<br>AUTHORITIES IN SUPPORT THEREOF;<br>REQUEST FOR JUDICIAL NOTICE** |

20
                                        Date:          January 20, 2005
21                                      Time:          2:00 p.m.
                                        Department:  31
22                                      Judge:        Steven A. Brick

23

24

25

26

27

28  Hung Ha v. Andrew Ross, et al.                                    Case No. 2002074172
    Notice Of Motion And Motion To Have Plaintiff Declared A Vexatious Litigant; For Plaintiff To Post Security Pursuant To
    CCP § 391.1; For A Pre-Filing Order To Preclude Plaintiff From Filing New Litigation In Propria Persona; Memorandum Of
    Points And Authorities In Support Thereof; Request For Judicial Notice

ORIGINAL

Exh. H

C. 186
P. 129

1    **TABLE OF CONTENTS**

2                                                                                    **Page**

3    NOTICE OF MOTION AND MOTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4    MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

5        I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

6        II.   HUNG HA'S LITIGATION HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

7        III.  STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

8        IV.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

9              A.    Mr. Ha's Extensive History of in Propria Persona Litigation
                     Warrants this Court Declaring Him a Vexatious Litigant . . . . . . . . . . . . . 6
10
              B.    Mr. Ha Should Be Required to Post Security Pursuant to Section 391.1
11                   as a Condition for Proceeding With The Instant Action . . . . . . . . . . . . . . 8

12             C.    This Court Should Issue a Prefiling Order Prohibiting Mr. Ha
                     From Filing Any New Actions in Propria Persona Without Obtaining
13                   Leave of The Presiding Judge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

14       V.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

15   REQUEST FOR JUDICIAL NOTICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

16

17

18

19

20

21

22

23

24

25

26

27
                                                i.

R130

187

1          **NOTICE OF MOTION AND MOTION**

2    TO PLAINTIFF, HUNG HA, In Propria Persona:

3              PLEASE TAKE NOTICE that on Thursday, January 20, 2005, at 2:00 p.m.,

4    or as soon thereafter as this matter may be heard, in Department 31 of the above-entitled Court,

5    located at 201 - 13th Street, Oakland, California, 94612, defendant will move this Court

6    for the following orders:  (1) to declare plaintiff a vexatious litigant; (2) to require plaintiff

7    to post security prior to proceeding further with the instant lawsuit filed on December 2, 2002;

8    and (3) to prohibit plaintiff from filing future lawsuits in propria persona in California courts

9    without first obtaining leave of the presiding judge in which the litigation is to be filed.

10             This motion is made on the ground that plaintiff meets the statutory definition of

11   a vexatious litigant as set forth in section 391, subdivision (b)(1) of the Code of Civil Procedure.

12   It is also made on the ground that to prevent further abuse of the judicial process, plaintiff should

13   be required to furnish security in an amount to be determined by this Court as provided in section

14   391.3 of the Code of Civil Procedure and, pursuant to section 391.7 of this statute, good cause

15   exists for this Court to issue a pre-filing order to curb plaintiff's future litigious behavior.

16   ///

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27

1.

28   Hung Ha v. Andrew Ross, et al.                                                Case No. 2002074172
     Notice Of Motion And Motion To Have Plaintiff Declared A Vexatious Litigant; For Plaintiff To Post Security Pursuant To
     CCP § 391.1; For A Pre-Filing Order To Preclude Plaintiff From Filing New Litigation In Propria Persona; Memorandum Of
     Points And Authorities In Support Thereof; Request For Judicial Notice

188
P.131

1    This motion will be based on this notice of motion and motion, the attached

2    memorandum of points and authorities, attached Request for Judicial Notice with exhibits,

3    the records and file herein, and on such evidence as may be presented at the hearing of the motion.

4    DATED:  December 17, 2004

5                                    Respectfully submitted,

6                                    BILL LOCKYER, Attorney General
                                     of the State of California
7                                    TYLER B. PON
                                     Lead Supervising Deputy Attorney General
8

9

10

11                                   AMY W LO,
                                     Deputy Attorney General

12                                   Attorneys for State Court Defendants,
                                     WINTON McKIBBEN; THOMAS REARDON; and
13                                   STATE OF CALIFORNIA

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                              2.

28    Hung Ha v. Andrew Ross, et al.                                    Case No. 2002074172
      Notice Of Motion And Motion To Have Plaintiff Declared A Vexatious Litigant; For Plaintiff To Post Security Pursuant To
      CCP § 391.1; For A Pre-Filing Order To Preclude Plaintiff From Filing New Litigation In Propria Persona; Memorandum Of
      Points And Authorities In Support Thereof; Request For Judicial Notice

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.

3

### INTRODUCTION

4    Plaintiff Hung Ha has engaged in a pattern of burdening the State's courts

5  and wasting the State's limited financial resources on frivolous lawsuits. Since 2002, Mr. Ha

6  has filed <u>thirteen</u> civil actions in propria persona in the Superior Court of California in and

7  for the County of Alameda ("Superior Court") alone. In all of these lawsuits, Mr. Ha applied for

8  and was granted waivers of various court costs.

9    The sheer number of filings by Mr. Ha already meets the statutory definition of

10  "vexatious litigant," who is defined as any person who has

11    [i]n the immediately preceding seven-year period
      has commenced, prosecuted, or maintained
12    in propria persona at least five litigations other
      than in a small claims court that have been
13    (i) finally determined adversely to the person or
      (ii) unjustifiably permitted to remain pending
14    at least two years without having been brought
      to trial or hearing.

15

16  Code Civ. Proc., § 391(b)(1). Moreover, Mr. Ha has sued the same individuals and institutions

17  repeatedly. Accordingly, this Court would be more than justified in issuing an order declaring

18  Mr. Ha a vexatious litigant under Code of Civil Procedure, section 391, et seq.

19

### II.

20

### HUNG HA'S LITIGATION HISTORY

21    The lawsuit currently pending before this Court was filed on December 2, 2002.

22  Almost two years after the case was filed, plaintiff filed a First Amended Complaint on October 29,

23  2004, announcing that he seeks $50 million in compensatory damages. This litigation has

24  proceeded for almost two years without any participation from the defendants, who were never

25  served during that time.

26  ///

27                                    3.

28  Hung Ha v. Andrew Ross, et al.                                    Case No. 2002074172
   Notice Of Motion And Motion To Have Plaintiff Declared A Vexatious Litigant; For Plaintiff To Post Security Pursuant To
   CCP § 391.1; For A Pre-Filing Order To Preclude Plaintiff From Filing New Litigation In Propria Persona; Memorandum Of
   Points And Authorities In Support Thereof; Request For Judicial Notice

1    On November 18, 2004, for the first time, plaintiff served a summons and his

2    original complaint on defendants Thomas Reardon and Winton McKibben, a judge and a retired

3    judge formerly with the Superior Court. Mr. Ha claims that these judges allied themselves

4    with the County prosecutor in the criminal trial of *People v. Hung Ha*, Case No. 166802,

5    which was based on events that transpired on March 1, 2001. Compl. at p. 4, ¶¶ 8-9. As a result

6    of this alleged alliance, Mr. Ha was convicted by a jury of three criminal offenses under the

7    Penal Code on January 4, 2002. Compl. at p. 4, ¶ 1. As shown in the demurrer filed

8    concurrently with this action, Mr. Ha's lawsuit is barred by absolute judicial immunity and

9    the Supreme Court's decision in *Heck v. Humphrey* (1994) 512 U.S. 477.

10    In addition to the frivolous action before this Court, Mr. Ha has an extensive

11    history of burdening this Superior Court with frivolous lawsuits, all filed in pro per, as follows:

12    1.    On September 24, 2002, plaintiff filed *Ha v. Rhoden* ("*Rhoden I*"), Case No.

13    2002066008. Among the defendants named in that action was Winton McKibben, moving party

14    and defendant in this action. Most recently, plaintiff's petition for writ of mandate was denied

15    by the Court of Appeal on August 5, 2004. (Req. for Jud. Not., Ex. A.)

16    2.    On October 11, 2002, plaintiff filed *Ha v. Employment Development Dept. of*

17    *the State of California* ("*EDD I*"), Case No. 2002068505, which is a petition for writ of mandate

18    regarding denial of petitioner's unemployment insurance benefits. The case is still pending.

19    (Req. for Jud. Not., Ex. B.)

20    3.    On October 15, 2002, plaintiff filed *Ha v. Kochis*, Case No. 2002068743.

21    The case was dismissed on August 1, 2003. The Court of Appeal affirmed the dismissal on

22    September 24, 2004. The Court of Appeal also issued an order denying plaintiff's petition for

23    rehearing on October 25, 2004. (Req, for Jud. Not., Ex. C.)

24    4.    On October 28, 2002, plaintiff filed *Ha v. Fry*, Case No. 2002070272. The case

25    alleged civil rights violations against several defendants, including the University of California

26    Police Department. The case was dismissed on August 20, 2003. The plaintiff appealed the

27

4.

1  decision. The Court of Appeal affirmed the dismissal on September 28, 2004. On November 3,

2  2004, the Court of Appeal also issued an order denying plaintiff's petition for rehearing.

3  (Req. for Jud. Not., Ex. D.)

4      5.    On November 21, 2002, plaintiff filed *Ha v. Employment Development Dept. of*

5  *the State of California* ("*EDD II*"), Case No. 2002073245. The case was dismissed on March 19,

6  2004. The case is currently on appeal. (Req. for Jud. Not., Ex. E.)

7      6.    Also, on November 21, 2002, plaintiff filed *Ha v. Rhoden* ("*Rhoden II*"),

8  Case No. 2002073252. The case alleged civil rights violations against several defendants,

9  including the Regents of the University of California. The case was dismissed on June 16, 2002.

10  The Court of Appeal affirmed the dismissal on September 28, 2004. (Req. for Jud. Not., Ex. F.)

11      7.    Also, on November 21, 2002, plaintiff filed *Ha v. Aranas*, Case No. 2002073289.

12  The complaint was dismissed on May 28, 2003. The dismissal was affirmed by the Court of

13  Appeal on September 24, 2004. On October 25, 2004, the Court of Appeal also issued an order

14  denying plaintiff's petition for rehearing. (Req. for Jud. Not., Ex. G.)

15      8.    On December 2, 2002, plaintiff filed *Ha v. Ross*, Case No. 2002074172,

16  the case currently pending before this Court. As previously noted, the summons and complaint

17  were not served on any defendant until almost two years after the lawsuit was filed. (Req. for

18  Jud. Not., Ex. H.)

19      9.    On December 27, 2002, plaintiff filed *Ha v. Harrison*, Case No. 2002077102.

20  That case is still pending. At this time, there has been no appearance on behalf of any of the

21  defendants, which includes the University of California at Berkeley. (Req. for Jud. Not., Ex. I..)

22      10.    On March 25, 2003, plaintiff filed *Ha v. County of Alameda*, Case No.

23  RG03088377. The action was a petition for relief from the government tort claim requirements.

24  The petition was denied on June 11, 2003. The Court of Appeal affirmed the denial of the

25  petition on September 28, 2004. The Court of Appeal also denied rehearing on October 21, 2004.

26  (Req. for Jud. Not., Ex. J.)

27                 5.

28  **Hung Ha v. Andrew Ross, et al.**                                  Case No. 2002074172

192 p.135

1    11.    On July 1, 2003, plaintiff filed *Ha v. State of California*, Case No. RG03104385.

2  The action was a petition to file a late government tort claim. The action is still pending.

3  (Req. for Jud. Not., Ex. K.)

4    12.    On October 17, 2003, plaintiff filed *Ha v. Berkeley Bowl Marketplace*, Case No.

5  RG03122206. The complaint was dismissed on June 4, 2004. The appeal is currently pending.

6  (Req. for Jud. Not., Ex. L.)

7    13.    On February 2, 2004, plaintiff filed a writ of mandate case *Ha v. Municipal Court*

8  *in Oakland-Piedmont-Emeryville*, Case No. RG04137471. The case is currently pending.

9  (Req. for Jud. Not., Ex. M.)

10                                        **III.**

11                              **STANDARD OF REVIEW**

12    A court exercises its discretion in determining whether a person is a vexatious

13  litigant. (*Taliaferro v. Hoogs* (1965) 237 Cal.App.2d 73, 75.) A trial court's ruling will be upheld

14  if it is supported by substantial evidence. (*Bravo v. Ismaj* (2002) 99 Cal.App.4th 211, 219.)

15  The vexatious litigant statutes are constitutional and do not deprive a litigant of due process of law.

16  (*Id.* at p. 222.)

17                                        **IV.**

18                                    **ARGUMENT**

19    **A.    Mr. Ha's Extensive History of in Propria Persona Litigation Warrants**
          **this Court Declaring Him a Vexatious Litigant.**
20

21    In 1963, the Legislature, in response to the burdens imposed on courts

22  by vexatious litigants, enacted Code of Civil Procedures section 391- 391.6.[1] These statutes

23  were intended to "curb the misuse of the court system by those acting in propria persona . . .

24  whose abuse of the system not only wastes court time and resources, but also prejudices parties

25  waiting their turn before the courts." (*In re Bittaker* (1997) 55 Cal.App.4th 1004, 1008.)

26  _____

27  1. All further references are the Code of Civil Procedure unless otherwise indicated.
                                        6.

28  Hung Ha v. Andrew Ross, et al.                                    Case No. 2002074172
Notice Of Motion And Motion To Have Plaintiff Declared A Vexatious Litigant; For Plaintiff To Post Security Pursuant To
CCP § 391.1; For A Pre-Filing Order To Preclude Plaintiff From Filing New Litigation In Propria Persona; Memorandum Of
Points And Authorities In Support Thereof; Request For Judicial Notice

1 │ Relevant to the instant litigation is *First Western Development Corp. v. Superior Court* (1989)

2 │ 212 Cal.App.3d 860, 867-868, in which the court described vexatious litigants as "persistent and

3 │ obsessive litigants [who] would often file groundless *actions against judges and other court*

4 │ *officers who made adverse decisions to them*." (Emphasis added.)

5 │        Pursuant to section 391(b)(1) a vexatious litigant is a person who:

6 │                [i]n the immediately preceding seven-year period
   │                has commenced, prosecuted, or maintained
7 │                in propria persona at least five litigations other
   │                than in a small claims court that have been
8 │                (i) finally determined adversely to the person or
   │                (ii) unjustifiably permitted to remain pending
9 │                at least two years without having been brought
   │                to trial or hearing.

10

11 │ (Code Civ. Proc., § 391, subd. (b)(1).) "'Litigation' means any civil action or proceeding

12 │ commenced, maintained or pending in any state *or* federal court." (Code Civ. Proc., § 391,

13 │ subd(a).) (Emphasis added.) The definition of "litigation" includes appeals as well as petitions

14 │ to the appellate courts. (*McColm v. Westwood Park Assn.* (1998) 62 Cal.App.4th 1211, 1216,

15 │ 1219.) It is important to note that the definition of vexatious litigant does not require that

16 │ the trial court find that the previous lawsuits had no merit or that they involved the same parties

17 │ and/or same issues as presented in the pending litigation.

18 │        The relevant inquiry under subdivision (b)(1) of section 391 is whether in the

19 │ preceding seven years, a person acting in propria persona has filed at least five 'litigations' which

20 │ have been finally determined adversely to the person. The seven year period is measured from

21 │ the date the defendant files the motion to have a party declared a vexatious litigant and includes

22 │ any action which is prosecuted or maintained by the pro per litigant within this time frame.

23 │ (See *Stolz v. Bank of Am.* (1993) 15 Cal.App.4th 217.)

24 │        Mr. Ha easily qualifies as a vexatious litigant under the criteria set forth above.

25 │ Since 2002, he has commenced and maintained in propria persona 13 separate actions or

26 │ proceedings in the Superior Court alone. Of the five cases that have been finally adjudicated,

27 │                                                7.

1    all determinations were adverse to him. Notably, nearly all of Mr. Ha's lawsuits have involved

2    public entities or public employees, thereby requiring the State of California to expend

3    innumerable attorney hours and costs in defending these patently frivolous lawsuits. In addition,

4    in every action, Mr. Ha has been granted waivers of costs, thereby reducing the available

5    resources for pro per litigants with legitimate legal disputes.

6    **B.    Mr. Ha Should Be Required to Post Security Pursuant to Section 391.1
         as a Condition for Proceeding With The Instant Action.**

7

8        To curb the misuse of the court system by individuals acting in propria persona

9    who repeatedly file unmeritorious lawsuits and appeals, the Legislature enacted section 391.1,

10   which provides in relevant part that:

11           "[i]n any litigation pending in any court of this
             state, at any time until final judgment is entered,
12           a defendant may move the court upon notice
             and hearing, for an order requiring the plaintiff
13           to furnish security." (§ 391.1) [2]

14   (See also, *Bravo, supra,* 99 Cal.App.4th at 224.) The moving defendant must prove that

15   the plaintiff is a vexatious litigant and that there is no reasonable probability that the plaintiff

16   will prevail in the litigation. (§ 391.1.) In *Devereaux v. Latham and Watkins* (1995)

17   32 Cal.App.4th 1571, 1582, the court held that defendant can satisfy his burden that the

18   plaintiff has no reasonable possibility of prevailing by showing that "the plaintiff's recovery

19   is foreclosed as a matter of law or that there are insufficient facts to support recovery by the

20   plaintiff on its legal theories, even if all the plaintiff's facts are credited." Once this showing

21   has been made, the trial court *"shall* order the plaintiff to furnish, for the benefit of the moving

22   defendant, security in such amount and within such time as the court shall fix." ( § 391.3;

23   

24       2. "Security" is defined as set forth in Section 391(c) of the Code of Civil Procedure
         and pursuant to this section means "an undertaking to assure payment, to the party for
25       whose benefit the undertaking is required to be furnished, of the party's reasonable expenses,
         including attorney's fees and not limited to taxable costs, incurred or in connection with
26       a litigation instituted, caused to be instituted, or maintained or caused to be maintained
         by a vexatious litigant."

27                                        8.

28   **Hung Ha v. Andrew Ross, et al.**                                    Case No. 2002074177
     Notice Of Motion And Motion To Have Plaintiff Declared A Vexatious Litigant; For Plaintiff To Post Security Pursuant To
     CCP § 391.1; For A Pre-Filing Order To Preclude Plaintiff From Filing New Litigation In Propria Persona; Memorandum Of
     Points And Authorities In Support Thereof; Request For Judicial Notice

1  *McColm, supra,* 62 Cal.App.4th at p. 1215.) It is of no relevance that the plaintiff may

2  financially be unable to post security. (*Devereaux, supra,* 32 Cal.App.4th at 1588.) To preclude

3  further game playing by the litigious pro per, section 391.4 provides that if the security is not

4  furnished as ordered, then the litigation shall be dismissed as to the "defendant for whose benefit

5  it was ordered furnished." (§ 391.4; *McColm, supra,* 62 Cal.App.4th at p. 1215.)

6       As discussed above, it is abundantly clear that Mr. Ha meets the statutory

7  definition of a "vexatious litigant." As set forth in state defendants' concurrently filed demurrer,

8  Mr. Ha has no reasonable probability of prevailing in his pending action against these defendants.

9  Mr. Ha's present lawsuit is barred by absolute judicial immunity and the Supreme Court's

10  decision in *Heck v. Humphrey* (1994) 512 U.S. 477.

11       In the event that this Court gives plaintiff leave to amend his complaint, the state

12  defendants request that this Court order Mr. Ha to post security in an amount to be determined by

13  the Court, as set forth in section 391.3. Furthermore, the pending lawsuit should be stayed

14  until Mr. Ha posts this security. In the event that Mr. Ha fails to post this security in the amount

15  and by the date so ordered by this Court, then the pending action against the state defendants

16  should be dismissed with prejudice in accordance with section 391.4.

17       **C.    This Court Should Issue a Prefiling Order Prohibiting Mr. Ha**
         **From Filing Any New Actions in Propria Persona Without Obtaining**
18       **Leave of The Presiding Judge.**

19       In 1990, the Legislature enacted section 391.7, as part of the vexatious litigant

20  statutes in order to "provide the courts with an additional means to counter misuse of the

21  system by vexatious litigants" (*Bravo, supra,* 99 Cal.App.4th at 221.) (Emphasis added.)

22  This newer section has as its purpose a way to affect future filings by a pro per (*McColm, supra,*

23  62 Cal.App4th at 1216) and is seen as " a necessary means of curbing those for whom litigation

24  has become a game." (*Wolfgram v. Wells Fargo Bank* (1997) 53 Cal.App.4th 43, 60.)

25  In relevant part section 391.7 provides that

26  ///

27                                              9.

P 139

1

      "[T]he court may, on its own motion or the motion
2     of any party, enter a prefiling order which prohibits
a vexatious litigant from filing any new litigation
in the courts of this state in propria persona without
3     first obtaining leave of the presiding judge of the
court where the litigation is proposed to be filed."
4     (Code Civil. Proc. § 391.7, subd .(a).)

5   As held in *Bravo, supra,* 99 Cal.App.4th at 221-222, "[s]ection 391.7 does not deny the

6   vexatious litigant access to the courts, but operates solely to preclude the initiation of meritless

7   lawsuits and their attendant expenditures of time and costs. [Citation.]"

8         Of concern to the state defendants is that once the pending action is determined

9   adversely to Mr. Ha, he will initiate another frivolous action against the State and its employees

10   or officials. This concern is patently justified by Mr. Ha's prior behavior. The state defendants

11   accordingly request that pursuant to section 391.7 this Court issue a prefiling order -- this is the

12   only effective means by which to curb Mr. Ha's abuse of the judicial system.

13   ///

14   ///

15   ///

16   ///

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27             10.

(7. 140

V.

CONCLUSION

Mr. Ha has clearly met the criteria for this Court to declare him a vexatious litigant. In accordance with such a finding, Mr. Ha should be ordered to post security in an amount to be determined by this Court and the pending lawsuit against the state defendants be stayed until such security is furnished. If the security is not posted by the date set by the court, then this action shall be dismissed. The state defendants also request that this Court issue a prefiling order to preclude Mr. Ha from filing any new litigation without first having obtained leave of the presiding judge of the court where the proposed litigation is to be filed.

DATED: December 17, 2004

Respectfully submitted,

BILL LOCKYER, Attorney General
of the State of California
TYLER B. PON
Lead Supervising Deputy Attorney General

AMY W. LO,
Deputy Attorney General

Attorneys for State Court Defendants,
WINTON McKIBBEN; THOMAS REARDON; and
STATE OF CALIFORNIA

11.

1      ## REQUEST FOR JUDICIAL NOTICE

2      This Request for Judicial Notice is made pursuant to Evidence Code section 452,

3  subdivision (c), which provides that the Court may take judicial notice of the "official acts

4  of the legislative, executive, and judicial departments of the United States and of any state of

5  the United States." The state defendants respectfully request that this Court take judicial notice

6  of the following cases filed in the Superior Court of California in and for the County of Alameda:

7      1.    *Ha v. Rhoden* ("*Rhoden I*"), Case No. 2002066008, the register of action for

8  which is attached hereto as Exhibit A;

9      2.    *Ha v. Employment Development Dept. of the State of California* ("*EDD I*"),

10  Case No. 2002068505, the register of action for which is attached hereto as Exhibit B;

11      3.    *Ha v. Kochis*, Case No. 2002068743, the register of action for which is attached

12  hereto as Exhibit C;

13      4.    *Ha v. Fry*, Case No. 2002070272, the register of action for which is attached

14  hereto as Exhibit D;

15      5.    *Ha v. Employment Development Dept. of the State of California* ("*EDD II*"),

16  Case No. 2002073245, the register of action for which is attached hereto as Exhibit E;

17      6.    *Ha v. Rhoden* ("*Rhoden II*"), Case No. 2002073252, the register of action for

18  which is attached hereto as Exhibit F;

19      7.    *Ha v. Aranas*, Case No. 2002073289, the register of action for which is attached

20  hereto as Exhibit G;

21      8.    *Ha v. Ross*, Case No. 2002074172, the register of action for which is attached

22  hereto as Exhibit H;

23      9.    *Ha v. Harrison*, Case No. 2002077102, the register of action for which is attached

24  hereto as Exhibit I;

25      10.    *Ha v. County of Alameda*, Case No. RG03088377, the register of action for which

26  is attached hereto as Exhibit J;

27                                          12.

28  Hung Ha v. Andrew Ross, et al.                                                      Case No. 2002074172
Notice Of Motion And Motion To Have Plaintiff Declared A Vexatious Litigant; For Plaintiff To Post Security Pursuant To
CCP § 391.1; For A Pre-Filing Order To Preclude Plaintiff From Filing New Litigation In Propria Persona; Memorandum Of
Points And Authorities In Support Thereof; Request For Judicial Notice

1    11.    *Ha v. State of California*, Case No. RG03104385, the register of action for which

2    is attached hereto as Exhibit K;

3    12.    *Ha v. Berkeley Bowl Marketplace*, Case No. RG03122206, the register of action

4    for which is attached hereto as Exhibit L;

5    13.    *Ha v. Municipal Court in Oakland-Piedmont-Emeryville*, Case No. RG04137471,

6    the register of action for which is attached here to as Exhibit M.

7    DATED: December 17, 2004

8                                    Respectfully submitted,

9                                    BILL LOCKYER, Attorney General
                                     of the State of California
10                                   TYLER B. PON
                                     Lead Supervising Deputy Attorney General
11

12

13                                   _____

14                                   AMY W. LO,
                                     Deputy Attorney General

15                                   Attorneys for State Court Defendants,
                                     WINTON McKIBBEN; THOMAS REARDON; and
16                                   STATE OF CALIFORNIA

17

18

19

20

21

22

23

24

25

26

27                                          13.

exh 15   p 143 - p 145

court of appeal of the state of california                                    P. 143

first appellate district

division one

---

hung ha,                                          case no.: A112095
        plaintiff-appellant                       trial court: 2002074172 (Alameda)

        v.

andrew ross, alameda county, mark rhoden,
jason collom, sean aranas, unknow forster,                    OCT 3 1 2006
alex yao, wiuton mckibben thomas reardon,
state of california, devin kochis, et al          Court of Appeal-First App. Dist.
        defendants-respondents                        DIANA HERBERT
                                                  By_____
                                                                    DEPUTY



        superior court of california, in and for alameda county

        participating judges: honorable william mckinstry
                              honorable james a. richman
                              honorable steven a. brick
                              honorable judith ford
                              honorable jo-lynne lee
                              Honorable Patrick J. Zika


PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE, number two
RE:  different tenor
Submitted by Hung Ha
        P. O. box 367, Berkeley, CA 94701-0367


*Hung Ha*


footnote 1
Request for judicial notice number one was submitted on April 17, 2006.

                                        Exh. 15

I. REQUEST FOR JUDICIAL NOTICE OF REGISTER OF ACTION SUBMITTED BY
JUSTICE DEPARTMENT IN SUPPORT OF ITS MOTION FOR VEXATIOUS LITIGANT ORDERS

Plaintiff-appellant respectfully request that the Reviewing Court
take judicial notice of the register of action pages provided by Justice
Department in support of its motion for vexatious litigant orders.

Those pages are included in Clerk's Transcript of this appeal,
at pp. 200 to 229.  I thus assume that there is no need to attach them to Request.

II. MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF REQUEST FOR JUDICIAL NOTICE

Under Cal. Evid. C. s.459(a) , it is stated: "The reviewing
court may take judicial notice of a matter in a tenor different from that
noticed by the trial court."  STANDARD CALIFORNIA CODES: 6-in-1, 2006 ed. p.11
(Evid. code).

As one reads the exhibits which Lo provided in making  her request
for judicial notice (as to existence of the records to which those exhibits
pertained), a number of important points should be noted in furtherance
of justice and due administration of law.  The following pages represent my
attempts to bring attention to these points, in support of my request for
judicial notice of the same documents, with respect to a different tenor from
the tenor which Justice Department of California and the Honorable James A.
Richman apparently/obstensibly brought out from those records.

HA V. ALAMEDA at p.i
HA V. KOCHIS, p ii
HA V. FRY, p iii
HA V. RHODEN II, p iv
HA V. ARANAS, p v
HA V. RHODEN I, p vi
HA V. EDD I, p vii
HA V. EDD II, p viii
HA V. ROSS, p  ix -x
HA V. HARRISON, P xi
HA V. STATE OF CALIFORNIA, p xii
HA V. BERKELEY BOWL MARKETPLACE, p xiii
HA V. SUPERIOR COURT      p.xiv

Reasons                                                                                 45

As I understand, the tenor of Justice Department of California's
Exhibits is fundamentally, in nature, different from the tenor which Lo,
Judge Richman, and PWB lawyers apparently/obstensibly discerned in the same
thing.    The following pages represent my attempt or effort to bring out
the tenor in those records as I discern it, though my effort (if correct) certainly
will be imperfect.

### issues concerned

These same exhibits concerned the issue of whether I may be appropriately
deemed a vexatious litigant under CCP s.391(b)(1), subpart i, although
subpart ii could be an issue.

Further, the effect of a determination of the foregoing issue will be
that other orders will be affected which depend on the presumed validity
of the Order issued  by Judge Richman declaring me a vexatious litigant.

### Tenor  in different light

(1)    Although Justice Department did not argue that subpart ii of s.391(b)(1)
was met, my  observation on the following pages shows that not one single
case was within the scope of subpart ii.   Only HA V. STATE OF CALIFORNIA
was "dormant"  by December 22, 2004, on which Justice Department's motion was
filed; that petition for relief from default was filed on July 1, 2003, following
Judge Richman's denial of similar petition in  HA V. ALAMEDA, on June 11,
2003.

(2)  As to subpart i of s.391(b)(1), not one single case among the 13
cases produced a final determination within the scope of that provision.

(3)  None of the five cases relied on by Justice Department, and relied
onby Judge Richman was a final determination within the scope of that provision.
.  .  .  .

(N) While I am being kept busy defending myself, the true evil escaped
attention: judicila  fraud, and a fraud of enormous magnitude.
                                                    Respectfully submitted by Hung Ha
                                                    /Cal. bar #: 166112

exh 16   p 146 - p 157

000004

1) On March 4, 2001, when I was going from the sport facilities (RSF) of the University (UCB) to the undergraduate library, with a plan to get a bottle of clean water, I stopped by Dwinelle Hallfor a very short time. There, Officer Mark Rhoden and Officer Jason Collom attacked me while I was doing absolutely nothing wrong, nor anything unusual. When additional officers arrived at the location, I made citizen arrest of Rhoden and Collom for felonies, or attempted to. I am a U.S. citizen, and hold two degrees from University California, one of them from the Business School of UCB. At that time, I was a member of the University's Recreational Sports Club with annual membership due fully prepaid, had paid lifetime membership fee of Alumni Association at UCB, and a current account with the University's Housing and Services Office. I am an immigrant from Asia, and speak obviously flawed English. I am male.At the time of that event, I had a number of personal identification with me, in the brown, leather wallet, which includeda current library card issued by UCB, current Club membership card, accout identification card with the University's Housing and Dining Services, the business card of an official at the University's Housing and Dining Services Office, and other objects. In the inside pocket of my cotton, long-sleeved jacket, there was a document, dated March 2, Friday, which indicates my personal information in connection with UCB.

47 >

2) When Officer Sean Aranas arrived at the premises of Dwenelle Hall on a bike, he knew that Rhoden, a White Office, and Collom, a Chinese from Hong Kong, had committed crimes upon a member of the University. So Plaintiff alleges and believes.

3) Plaintiff believes and alleges that Aranas noticed the lumps of stool fallen upon the ground next to the patrol car in which I had been stuffed by Officer Rhoden as I tried to solicit the help from Berkeley Fiire Department to effect the citizen arrest, where I had stood. Aranas knew that I had been terrorized by Rhoden and Collom.

4) Plaintiff believes and alleges that Aranas had participated in the decision-making among the officers as who was to drive Collom to Hospital and who was to drive me to Berkeley City Jail. Aranas knew that Rhoden was to drive Collom to hospital so that the two of them could collaborate their false versions of the event that occurred on the second floor or E-level of Dwinelle Hall, in support of their false charges of trespass, battery of/on Collom, and violation of PC s.148.

5) An European descent, Officer Aranas was eager to help Rhoden and Collom escape criminal liability for their totally unjustified violence. So Plaintiff believes and alleges.

6) Plaintiff believed and alleged that Aranas knew that I was eager to return to my normal life. At that time I had been working at a supermarket on part-time basis, and the company had broad power to fire an employee with or without good cause. I had important personal interests dependent on the mode of life that I was enjoying or leading at the time. He knew that being arrested, charged, jailed would be extremely stressful to me and could entail enormous harms to my person and/or peroperty interests.

7) Plaintiff believed and alleges that Aranas did not have to, but chose to be the one to drive me to the City jail, using Rhoden's patrol car.

8) When Aranas entered tٍh patrol car (intending to drive me to jail), I summoned his help for the arrest of Rhoden and Collom. He ignored me. I said: "I am not a suspect. Two officers attacked me." He said nothing.

9) Plaintiff believed and alleges that, at that time, Aranas knew that Dwinelle Hall (South half) was open every day of the week till late at night, even on weekends and some of the widely observed holidays, and he had my wallet as well as all other belongings that I carried. The Dispatch of UCPD had already retrieved, on the University's computer record/database, information concerning my affiliation with the University, and Aranas knew that.

Ah. 16 = A

147

000005

10) Plaintiff believes and alleges that at that time, Aranas had seen other people were using Dwinelle Hall, such as numerous students (presumably) practicing dance in the front lobby of the Hall (facing Dwinelle Plaza).

11) When Aranas entered Rhoden's patrol car, he smelled strong odor of feces coming from my person.    He knew that I stated the truth that two officers had attacked me.

12) Knowing that I was a victim of crimes rather than a criminal suspect, Aranas drove me to Berkeley City jail for booking on the charges of trespass, batter of police officer with injury, and violation of s.148.

13)A In Berkeley City Jail, I attempted to make criminal report with Berkeley Police Department through jailer Mr. ___ Sanchez, Aranas said: "They (BPD) are not the Watchdog of us (UCPD.)  He again refused to accept my report of crimes committed by UCPD's officers.

13)B In Highland Hospital where Aranas took me to, I narrated the event to Aranas, under an agreement that he would write down my narrative or statement.

14) Aranas did take written notes of my narrative on a small notebook.

15) When Aranas was handling my personal effects at Berkeley city jail, he had looked through the content of my wallet. Plaintiff believes and alleges that Aranas saw the stack of my personal identification cards, and knew that I was a member of the University.    a.

16) Plaintiff believes and allege that as Aranas heard my statement and narrative of the event in which Rhoden and Collom committed crimes against me and tried to cover up their crimes by falsely accusing of wrongdoing, Aranas believed me 100%.

17) Back to Berkeley Jail, Aranas took my property of large size to UCPD for safety storage, not for evidence of any crime. Among them there was a tote bag (?), with a strap for the shoulder, and a backpack. Plaintiff believes and alleges that Aranas examined the content of those two bags, and he knew that they contain nothing that would implicated sleeping overnight on the second floor or E-level of Dwinelle Hall on UCB campus.

18) When he met his colleaques at UCPD that night after returning from Berkeley City jail, Aranas actively contributed his thoughts and information to Rhoden's an dCollom's attempt to write up false arrest/crime reports.

19) Aranas deliberately, knowingly submitted a false arrest/crime report obstensibly based on my voluntary statements made earlier during the night at Highlnad Hospital. He was helping Rhoden and Collom escape the law.

20) On or about Nov. 16, 2001, Aranas was under defense's subpoena duces tecum to bring his notebook with his notes of my statement and narrative of the event on March 4, 2001. Plaintiff believes and alleges that Aranas deliberately destroyed his notebook or the relevant pages in it, or otherwise deliberately failed to produce the documentary evidence.

21) On that Nov. 16, the judge in Dept. 102 ordered the officers who were present to stand by as defense witnesses; Aranas was among them.

22) Plaintiff believes and alleges that Aranas had been interviewed by District Attorney as prosecution witness, and agreed to offer false testimony in a concerted effort to bring about a wrongful conviction of me in People v. Hung Ha, 166802 (Alameda 2001).

23) When I was "arrested" on December 4, 2001 while exercising in the Recreational Sports Facilities (RSF), Aranas was involved in the planning; and so Plaintiff believes and alleges. He participated in a concerted action to interfere my self-representation in People v. Ha, supra.

24) Plaintiff believes and alleges that while the trial was taking place, Aranas knew that Rhoden and Collom were giving false testimony.

25) At the trial, ARanas was present in the Courthouse, being ready to give his false testimony as to the statement and narrative which I made

Ex. 16 A

000006
148

to him on the night of March 4, 2001, in Highland Hospital.

26) On January 2, 2002, at lunchtime, I spoke to Aranas in Dept. 109 (?) in the presence of District Attorney Mr. Ross, informing him and through him, his colleagues, that my subpoenas were effective and that they were notofied to appear in court as defense witnesses.

27) After that, Aranas disppeared from the Courthouse. He no longer was available to testify as Prosecution witness, hence denying me the chance to have him testify as defense wtiness (I was bïeng in custody through the trial).

28) On January 3, 2002, I called UCPD from Courthouse and left a notification message with the Dispatch pursuant to an agreement among the Court, me, and the officers who appeared on Nov. 16, 2001 in Dept. 102.

29) Plaintiff believes and alleges that all the officers under my sobooenas knew that the trial would take as little as two days, and had advance notice of the time when Defnese needed them to appear as defense witnesses.

30) All the officers under Court's verbal order rendered Nov. 16, 2001 and Defense's subpoenas failed to appear. Aranas intentionally failed to appear to testify for defense.

31) Plaintiff believes and alleges that Aranas has known all along that the conviction of me, which occurred on and after January 4, 2002, is wrongful, but has deliberately failed up to the present to come forward with the knolwedge that would free me and exculpate Rhoden and Collom, and District Attonrey Andrew Ross.

32) Because Aranas failed to produce his written notes of my statement and narrative made to him in Highland Hospital on March 4, 2001, I was prevented to show at my trial that his crime/arrest report was deliberately, knowingly false, and that Aranas was attempting to exculpate Rhoden and Collom by contributing to the wrongful prosecution and conviction of me in People v. Ha, supra.

33) Plaintiff believes and alleges that Aranas knew that District Attorney Andrew Ross believed that in the event that underlies People v. Ha, supra, Ha was not the criminal but Rhoden and Collom were, and had committed very serious felonies, as well s lesser crimes. They (ι̇H)

34) Plaintiff believes and alleges that Aranas has known since no later than Dec. 18, 2001, that Rhoden and Collom had conspired with District Attorney Mr. Ross to turn the prosecution into a scheme to free Rhoden and Collom from legal consequences by wrongfully convicting me.

35) Becasue of Aranas' wrongful behavior, Plaintiff has been suffering a great deal of stress.

36) Because of Aranas' misconduct, I was convicted in People v. Ha, supra.

37) As a result of the wrongful conviction, I have been unable to obtain unemployment insurance compensation & victim of violent crimes compensation by the State; unable to resume a normal life; and I have been suffering from depravation of daily necessities because I lack sufficient funding. I have even lost the option of returning to my previous part-time job.

38) This wrongful convcition has halted my personal business, for which my time is measured at $375 per hour, and a minimum of $750 per day (2 hours @ $375).

39) Because of the wrongful conviction, UCPD has continued to harass me or otherwise interfere with my rights and privileges in Berkeley.

40) At UCPD, a sign is conspicuously posted in the "Services" area to the effect that a code of ethics is imposed on officers, and Aranas sees the sign every day he comes to the Department for a workday.

ATTACHMENT 10                    6

EX 16 A

41) Plaintiff believes and alleges that the verdict and judgment of conviction in People v. Ha, supra, are absolutely void and null.

42) Neither the Court nor District Attorney has conceded to Defendant in P. v. Ha, supra, as to the date of this writing.

43) In P v. Ha, supra, my appeal of the wrongful conviction is pending.

44) Stayed on my motion, the probation order in P. v. Ha, supra, consists of such terms that would, if put into effect, would stop me from prosecuting this action.

45) I am being prevented by various factors to prosecute this action for the time being.

46) Though void and null as I believe and allege, the sentence in People v. Ha, supra, contains the latent order that I could be ordered to stay awary from all UC buildings.


SUPPLEMENTS

47) (Inserted between 2 and 3) Plaintiff believes and alleges that when Aranas arrived at Dwinelle Plaza, he knew that Collom's right hand suffered multiple contusion on the knuckles because it had struck my head for multiple times.

48) (Inserted betwen 12 and 13) Plaintiff believes and alleges that at that night while Aranas had me in his custody, he knew that I did not resist Rhoden's and Collom's "arrest" of me by, as they alleged, flailing my arm(s).

49) (Inserted between 13(A) and 13(B))  In Highland Hospital where Aranas took me on that night of March 4 for medical examination of my injuries, there was absolutely no injury on my left elbow, not one single bruise; even if a slight one did not exist.  Aranas did not ask the Physician or nurse who examined me to examine my left elbow.

50) Plaintiff believes and alleges that Aranas knew all along that Collom was lying to cover up his violent crimes when he claimed that, to free my left elbow from his grip, I banged my left elbow at least five times against the wall at the end of the hallway (east end in south wing of the building).

51) (Inserted bewteen 23 and 24) On Dec. 4, 2001, Aranas knew that on the previous March 4, I did not violently attack : Collom's right hand, nor wildly flailed my arm in resisting "arrest."   So Plaintiff believes and alleges.

52) Plaintiff believes and alleges that around Nov. 26 (?), 2001, Aranas and Rhoden went out of Alameda County obstensibly on a visit to the Police Department in Los Angeles (LAPD), when they were attempting to avoid the trial in People v. Ha, supra.   (Inserted between 21 and 22)

53) (Inserted between 16 and 17) On the return trip from Highland Hospital to Berkeley City Jail, Aranas expressed to me that Rhoden had attacked and "arrested" me because I refused to disclose my name and Identification.

54) (Inserted between 17 and 18) When Aranas examined my personal effects that night (March 4, 2001), he concluded or believed that I were poor and otherwise unprivileged; so Plaintiff believes and alleges.

Exh 16A

Attachment 10 to Complaint                                                          150

1) In the Service Window are at University of California Police Department on the campus of UCB, a code of ethics is conspicuously posted on the wall directly opposite to the Service Window. It imposes a duty on the officer not to oppress or tyrannize the less fortunate or unprivileged.

2) The police officers who are defendants in this action have been employed by the University of California at UCPD.

3) Officers Mark Rhoden and Jason Collom are the ones who attacked me while I was doing completely nothing wrong on March 4, 2001 in Dwinelle Hall on UCB, in an event that underlies People v. Hung Ha, 166802 (Alameda 2001). To escape legal consequences, they caused the District Attorney to file Complaint against me on the basis of three PC sections. In this criminal action, they and their fellow officers came under court orders to appear as defense witnesses at trial.

4) The Sheriff's Department had timely and properly served all of my subpoenas, for purpose of testifying at my trial, on officers Mark Rhoden, Jason Collom, Sean Aranas, Devin Kochis, Tom Wing (who may be excused on the assumption that his name was improperly used on a UCPD's internal record), Alex Yao (Sergeant), and Jonathan Ishimaru; and a Ghost Writer whose existence behind Officer Rhoden's crime/arrest report is believed and alleged by Defendant.

5) On Nov. 16, 2001, Sgt. Yao reported to the Judge in Dept. 102 that Officer Collom was in Hong Kong, who failed to appear in court that date.

6) Plaintiff believes and alleges that Collom went to H.K. in order to avoid the proceedings in the criminal action, in which he was one of the two percepient witnesses for Prosecution, other than defendant myself. Collom was trying to prevent the exposure of his crimes and falsehood.

7) on that Nov. 16, Judge _____ ordered the officers who were present to "stand by as defense witnesses at the upcoming trial. Those officers were Mark Rhoden, Sean Aranas, Alex Yao, and Tom Wing (whom I mistook for Jonathan Ishimaru).

8) In that hearing, it was agreed that I was to call the Dispatch at UCPD at least 24 hours before the trial began, to leave a message for the officers to appear in court.

9) Outside the Courtrom, Aranas gave to me his page number to call, in addition to the phone number of UCPD.

10) On or about Nov. 26, in Dept. 112, Judge Reardon instructed or ordered District Attorney Andrew Ross not to release the officers who were under People's subpoenas, so that Defendant did not have to worry about re-serving subpoenas on Officer Collom, who was arguably not under the judge's verbal order rendered on Oct. 16 in Dept. 102.

11) Ross raised no objection at that time, to Judge Reardon's verbal order or, at least, instruction.

12) Rhoden and Aranas were not available, causing Ross to request continuance, which was but one day, from Nov. 26 to 27 (if I remember the facts correctly at this moment).

13) It was said that Rhoden and Aranas were not available because they were visiting LAPD (Los Angeles).

14) Plaintiff believes and alleges that Rhoden adn Aranas were not in town in order to avoid the trial, which tehy feared that their falsehood would be exposed.

15) Plaintiff believes and alleges taht prior to Dec. 18, 2001, about which the trial began with jury selection, District Attorney Mr. Ross had assured Rhoden and Collom that their falsehood would not be exposed at the upcoming trial.

EXh. 16 B

16) Rhoden testifed as prosectutionwitness on Dec. 19 or 20 2001.

17) On Dec.21 or so, Collom testified at trial at prosecution witness.

18) On or about Dec. 21, Kochis testifed as prosecution witness as to the "arrest" which he made of me on Dec. 4 (earlier in the same month).

19) Ross did not call Sergeant Yao to testify.

20) Plaintiff believes and alleges that Ross did not call Sgt. Yao to testify against me because Yao refused to give perjured testimoney against me.

21) Aranas was present in the Court on January 2, 2002, being ready to offer his testimony for impeaching my credibility.

22) On that day, at lunch break, Ross said to me, in the presence of Aranas in Dept. 109 (?), that my subpoenas onthe officers were ineffecdtive, so that the officers were under no legal obligation to appear.

23) To that, I said that my subpoenas were effective throughout the trial,and the only issue at the time concerned notification because the jduge in Dept. 102 on Nov. 16 had ordered that at least 24 hours advance notice was required.

24) I wrote down a message on a piece of paper and gave it to Aranas, for him to notify other officers to appear as defense witnesses.    The message did not specify the date.

25) After that notification, Ross did not want Aranas to appear as prosecution to offer his impeachment testimony, so that Aranas did not come to the court th enext day, Jan. 3, 2002.

26) On Jan. 3 or so, Ross argued before Judge McKibben that I really did not need Rhoden and Collom to testify as my witnesses becuase, as Ross argued, I had already corss-examined them.

27) Plaintiff believes and alleges that Ross waspreventing me to call Rhoden and Collom to testify in order to prevent me from exposing their lies and crimes committed on March 4 plus perjury freshly added to their original crimes.

28) After much wranggling, I was permitted by Judge McKibben to make a phone call to UCPD,and I did.  I left a message that the officers under the verbal order to appear the next day, Jan. 4.

29) On the next day, the bailiff or courtroom deputy reported that no UCPD officers were present in the hallway.

30) I was unable to call the officers to testify before the case went to the jury on Jan. 4. As I was in custody at the time and Judge McKibben denied my request for continuance on Jan. 3, I was prevented from presenting Officers' testimony to the jury or for the record of the trial.

31) As a result, the record does not have the testimony of officers who were under defnese's court orders to appear, depriving me of the means by which to expose the illegality of the conviction and denials of my post-conviction motions.

(#) PRESRV 32) As I saw/witnessed the conspiracy to deprive me of my legal rights to evidence and argument, I suffered great mental anguish, both at the time of that development and afterwards.

33) As a result of conviction, I have faced a lot of works to do, which are exhausting, extremely stressful, costly, so forht,.

34) As a result of conviction, I have been unable to obtain Unemployemnt Insurance Compensation benefits, state Restitution funds, and suitable employment.

35) After conviction, I have run out of money and suffer severe deprivation.

36) My health has greatly suffered because of that development.

37) The verdict and judgment are completely void and null; so I believe

ATTACHMENT 10                          5

$Exh-16-2$

1    On March 4, 2001, Sunday, Mark Rhoden illegally detained Hung Ha
2    on the second floor or E-level of Dwinelle Hall, on the main campus of
     University of California at Berkeley, by the exit of the building,
3    which was open to the community of the university and public. Rhoden
     summoned the help of a Chiese Officer, Jason Collom. Together, they
4    beat Ha nad smashed him against a wall and the floor.
         Then these two officers of UCPD handcuffed Ha, and Officer Sean
5    Aranas transported Ha to the city Jail at Berkeley Police Department.
         Later that night, Rhoden and Collom filed false reports with the
6    UCPD.
         Officer Aranas filed false report regarding Ha's statement of facts
7    about what had occurred at the crime scene.
         On March 5, Rhoden filed a supplementary report, which specifically
8    requested the District Attorney to prosecute Ha, under the charge of
     violation of PC s.148.
9        As of March 6, the District Attorney's Office at Berkeley did file
     complaint against Ha, except that it substitute the charge of lodging
10   (PC s.647(j)) for trespass (PC s.602(1)).
         About April 2 or earlier, the District Attorney's Office had received
11   documents that Ha was a victim of crimes committed by Rhoden and Collom.
     and his conduct at issue did not constitute public offenses for detention
12   and arrest to be justified.
         At the trial of Ha that began on or about Dec. 19, 2001 (People v. Ha,
13   166802), Rhoden and Collom testified falsely about the unerlying event.
         District Attorney Andrew Ross knew before and throughout the trial that
14   Rhoden and Collom had com mitted crimes in the underlying event and were
     trying to extricate themselves from legal consequences by falsely accusing
15   Ha and falsely testifying against Ha.
         Ross participated and master-minded the scheme to exculpate Rhoden and
16   Collom by wrongfully bringing about the conviction of Ha.
         Roass participated and master-minded the perjury that that occurred at
17   the trila because Rhoden and Collom testified falsely and other officers
     deliberately failed to appear to testify on der Defense's subpoenas.
18       With the court's knowing help, Ross manipulated teh jury in returning
     general verdicts of guilty on all offenses as charged.
19       After the trial was over by January 4, 2002, Ross and Judge W. McKibben
     obstructed Ha's motions with which Ha had attempted to reverse the gross injusti
20   of the trial's outcome, resulting in a wrongful judgment that can be enforced
     (on technical ground).
21       Ross possesses critical exculplatory evidence which, if appearing on
     Court record, will establish Ha's innocence and the criminality of Rhoden
22   and Collom, but Ross has adamantly denied since trial his possession of such
     knowledge.
23       Such and other circumstuaces force Ha to appeal the wrongful conviction
     and judgment in People v. Ha, 166802 (Alameda 2001). Because the conduct by
24   UCPD's officers, Distrcit Attorney's Office, and the Court itself, the appeal
     involves many difficult issues, making its adverse effects upon Ha.
25
26
27
28

CAUSE OF ACTION--intentional tort, attachment            Exh 16 1

000006    P153

SHORT TITLE:

ha vs. Rhoden, Collom, Ross, et al

CASE NUMBER:

## Exemplary Damages Attachment

Page ___6___

ATTACHMENT TO ☑ Complaint ☐ Cross-Complaint

EX-1. As additional damages against defendant *(name):*

Plaintiff alleges defendant was guilty of
☑ malice
☑ fraud
☑ oppression
as defined in Civil Code section 3294, and plaintiff should recover, in addition to actual damages, damages to make an example of and to punish defendant.

EX-2. The facts supporting plaintiff's claim are as follows:

As described in attachment 1, Rhoden's initial detention of Ha was improperly motivated, and from it evil began growing out of control. What soon followed was a brutal, vicious senseless attack on Ha or, in a more important sense, a member of the University. Rhoden and Collom knew or had reasons to know that Ha was a member of the University, whose members it was the duty of UCPD to protect against crimes on campus.

To further their improper motives, UCPD officers jailed Ha and filed false reports against him, seeking to silence him by prosecution for non-existent crimes (i.e., alleged crimes which did not exist). ~ 's Office

Somebody in the District Attorney knew or had reasons to know the real nature of this case, People v. Ha, 166802, but they did nothing to further justice. District Attorney Andrew Ross, who conducted the trial for the People of California, delibertely deviated from his mandatory duty to present fully and fairly evidence to the Court and the People of California, because Ha aimed at the goal of exculpating Rhoden and Collom by bringing about the wrongful conviction of Ha. Ross emboldened, coached, permitted Rhoden and Collom to perjure at the trial in People v. Ha. Ross induced the jury to participate in a criminal scheme to obstruct and pervert justice or due administration of the law.

The Court that tried this case had knowingly departed from the goal of criminal justice system, which is to seek truth upon which the guilty shall be punished and the innocent shall not be made to suffer.

To make the victim suffer while letting the criminals who had attached and falsely accused him is remarkably wrong.

The combined action of those activities have brought great harms to Ha: loss of a normal life, and risks of many sorts.

EX-3. The amount of exemplary damages sought is
a. ☐ not shown, pursuant to Code of Civil Procedure section 425.10.
b. ☐ $

Exh 16D

Form Approved by the
Judicial Council of California

Ha v. Kochis

CC0004 154

1) On December 4, 2001, Officers Kevin Kochis and John Doe-1 handcuffed Plaintiff in a building on the main campus of the University of California at Berkeley; that building is known as Recreational Sports Facilities, or RSF for short.

2) Neither did the officers show to Plaintiff any court order nor arrest warrant as proof of authorization of arrest, when Plaintiff's activities were well within the scope of his membership with RSF; nor did they agree to discuss the rationale for their action.

3) Doe 1 personally handcuffed Plaintiff and drove him to UCPD, from which Kochis and Officer Sean Aranas drove Plaintiff to the jail of Berkeley City.

4) After sending Plaintiff to jail, Kochis returned to RSF, where he took one or more pictures of the content of Plaintiff's locker, and talked to the staff about Plaintiff.

5) At that time, a number of officers at UCPD were under Plaintiff's subpoenas to appear in the upcoming trial, in which he was the defendant, People v. H. Ha, -166802- (Alameda, 2001). Both Kochis and Aranas, mentioned above alike, were among the supoenaed officers. They were also under a court order to remain stand-by as defense witnesses.

6) Several days before Dec. 4, the Sheriff Department of this county had served Plaintiff's subpoena on a UCPD officers, by the name of Johathan Ishmaru.

7) Both Kochis and Aranas were to some extent, which was significant, direct witnesses to an event which occurred on March 4, 2001. From that event, the criminal case mentioned above arose. In that event, their fellow officers Mark Rhoden and Jason Collom were the direct participants.

8) Doe 1 supervised the act by which Plaintiff was taken prisoner.

9) In People v. Ha, Ha was representing himself, and as of Dec. 4, the trial was expected to begin on or shortly thereafter Dec. 10.

10) That trial went on while Ha was being held in custody at Santa Rita Jail.

11) The trial resulted in conviction of Ha, a judgment, and denial of his post-conviction motions.

12) In People v. Ha, all of the officers who were under Ha's subpoenas did not appear to testify as defense witnesses, inspite of a stand-by court order.

13) Both District Attorney Andrew Ross and Judge Winston McKibben had refused Ha's repeated contention that the trial was illigitimate because he had been illegally detained since Dec. 4.

14) The District Attorney's Office in Berkeley did not file a Complaint on the basis of allegations made by Kochis, who claimed that Ha violated PC-s. 166(4) (contempt of court).

15) Nor did Judge Carol Brasnahan find Ha in contempt of court on Dec. 5, although she revoked the O/R Agreement.

16) On Dec. 5, Judge Brasnahan's ruling did <u>not</u> reflect a finding that a court order had been violated.

17) In People v. Ha, supra, DA Mr. Ross called Kochis to testify as prosecution witness, who spoke about what he saw on Dec. 4 and his comments. Mr. Ross used that testimony to establish the facts of overt acts and intent allegedly imputed to Ha on March 4, 2001, in orer to support the allegations of Officers Rhoden and Collom.

18) In that trial, DA Mr. Ross desired to exculpate Officers Rhoden and Collom by convicting Ha, knowing well that Ha was the victim of and witness to the crimes which Rhodne and Collom had committed against him on March 4.

19) So did Judge McKibben's court; so did the jury.

20) As a result of the wrongful conviction in People v. Ha, supra, Ha has been facing adverse consequences.

4

Ha#

COMPLAINT: Attachment to 15

Exh 16-E

000005

21) Mentioned above, all the officers were employees of the University of California at Berkeley.

22) District Attorney Mr. Andrew Ross, the Court, and the sheriff's Department that runs Santa Rita Jail belong to the government of Alameda County

23) Together, these people's action referenced above have been making adverse effects upon Plaintiff, affecting all important aspects of his life: financial, business, academic, personal, etc.

24) UCPD posts conspicously a Code of Ethics regulating the conduct of its officers.

25) An immigrant from Asia, Plaintiff appears to be linguistically handicapped, poor, powerless, unfortunate (or less fortunate), so forth.

26) In People v. Ha, supra, the judgment of conviction is a nullity, and it is being appealed.

27) In a separate matter, Ha was being detained by the County from August 28 to September 17, 2002.

COMPLAINT: Attachment to 15

1) On August 27, 2002, when it was between 10:45 a.m. to 11:00 a.m., Sergeant Rick Dillard drove a patrol car toward Plaintiff in one direction of the traffic on Hillside Street, while Officer Charles Jones drove a van toward Plaintiff from the other side of Plaintiff in the other direction of the traffic. Crossing Hillside Street, Plaintiff was between those two cars

2) One civilian, Jesse Jardim (?), had been following Plaintiff, at a close distance by the time Plaintiff reached Prospect STreet from Hillside Street. There, Jardim (?) blocked Plaintiff on sidewalk.

3) The two officers immediately grabbed Plaintiff and searched his person as soon as they came out of their cars, on the charges that Plaintiff had trespassed on UC property and loitering among juveniles.

4) The officers ordered Plaintiff to sit down on the ground, and asked him for his name and identification card(s).

5) Both officers knew the case in which an event that took place on March 4, 2001, involved Plaintiff and their fellow officers Mark Rhoden and Jason Colom. They both knew that in that case, Plaintiff was victim of and witness to the crimes which Officers Rhoden and Colom had committed against him on and since March 4. 2001. People v. Ha, 166802 (Alameda 2001).

6) Sgt. Dillard and Officer Jones handcuffed Plaintiff on the charges urged by Lain (?) M. Fry, while ignoring Plaintiff's statement that Fry and Jardim be cited under his citizen's arrest for the public offenses of stalking, assault, and disturbing public peace.

7) These four individual knowingly attacked a member of the university, by use of the judicial system as well as police power.

8) Sergeant Dillard and Officer Jones wanted Plaintiff not to come to UCB campus. They wanted to accomplish that purpose. UCPD wants Plaintiff to be out of UCB campus.

9) Mr. Fry initiated and directed this abuse of police power at Plaintiff out of improper motive(s).

10) Mr. Fry lied about Plaintiff; his falsehood and the officers' (or UCPD's) falsehood merged together to form the accusations against Plaintiff.

11) It was solely on statements imputed to Mr. Fry that UCPD officers took Plaintiff out of his private life and put into jail of Berkeley City and, since Agust 28, county jail at Dublin/Pleasanton.

12) At Berkeley City Jail, Jones said to the jailers that Plaintiff had "long history" of crimes on UC property.

13) While Plaintiff was in jail, Officer Jones issued a stay-away order to Plaintiff.

14) Officer Jones urged the District Attorney and the judge to keep Plaintiff in jail.

15) UCPD has been hostile to Plaintiff because of the matters of event that underlies People v. Ha, supra, on and since March 4, 2001. Mr. Fry was hostile to Plaintiff for his own reasons.

16) Whereas Plaintiff is an Asian male who speaks obviously flawed English, Sergeant Dillard, Officer Jones, Mr. Fry and Jardim are Caucatian speaking English as their native language. Whereas teh four accusers are in or associated with the Establishment or the affluent classes, Plaintiff is not

17) UCPD professes to be under a code of ethics that is conspicuously posted in the service window area at UCPD.

18) On August 28, the District Attorney petitioned the court to revoke the probation order, if any, in People v. Ha. Has was kept in jail till released on September 16. Plaintiff was released on Setp. 17 at 1:10 a.m.

19) No charges had been filed against Plaintiff.

20) The court had no jurisdiction to hear DA's petition.

21) During detention, Plaintiff suffered coerced exposure to radiation.

22) During detention, Plaintiff suffered inhuman treatment of inmates.

23) In the period concerned, Ha had plenty of very important matters to

Case 3:07-cv-04699-SJ    Document 23-3    Filed 07/07/2008    Page 60 of 60
Ha v. Berkeley Bowl Marketplace, et al                              C00008
                                                                        157

1    listen to my explanation that his view was mistaken.  Although he usually

2    appears to be affable, he was hostile to me at that time.  I asked to see

3    Mr. Kataoka, and Mr. Evans refused my request, saying that he, not Mr. Kataoka,

4    was responsible for hiring from now on.

5         23) After speaking to Mr. Evans, I immediately spoke to the Manager

6    of the Produce Department, who affirmed his promise to use me if Mr. Kataoka

7    said "OK."  I then wrote a letter to Mr. Kataoka, requesting him to fulfill

8    his promise made on July 9, 2001.

9         24) I believe and allege that as of that Tueday in October 2002,

10   the top management of Berkeley Bowl Marketplace simply refused to consider

11   my employment application in violation of CC §51 that Californians are

12   free and equal.

13        25) I further believe and allege that as of that Tuesday in October 2002,

14   the top management refused employment to me becuase I had applied for

15   unemployment insurance benefts, in violation of Unemp. Ins. C. §100

16   (policy).and CC §51.(equal access to privilege. . .. ).

17        26) Occurring in October 2002, Berkeley Bowl Marketplace's refusals

18   to employ me breached a term of employment contract (under which I had actually

19   worked, with employee number of 700), the term that I would be rehired.

20        27) I believe and allege that Mr. Evans, Mr. Katqoka, and Mr. Glenn ____

21   intended to inflict very severe emotional stress on me in those days, by

22   refuisng to let me re-enter their work force.

23        28) As a direct result of their wrongful acts, I immediately suffered

24   graveedanger to my health, property,and life.  I was already in an unfortunate

25   situation, which was aggravated because lacking money.was doing a very

26   destructive damages to me.  After the worngufl acts of Defendants ahd taken

27   place, I had very hectic days trying to survive and to save my property.

28        29) When Defendants' wrongful acts were occurring, I had two real-estates

Exh 16-6